F I L E D
United States Court of Appeals
Tenth Circuit

FEB 19 1997

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

SAUL HARO-SALCEDO,

    Defendant-Appellant.

No. 96-4053

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 95-CR-66 S)

Stephen R. McCaughey, Salt Lake City, Utah, for Defendant-Appellant.

Richard D. McKelvie, Assistant United States Attorney (Scott M. Matheson, Jr., United States Attorney, with him on the brief), Salt Lake City, Utah, for Plaintiff-Appellee.

Before **PORFILIO, MCWILLIAMS,** and **HENRY**, Circuit Judges.

**PORFILIO**, Circuit Judge.

Defendant Saul Haro-Salcedo entered a plea of guilty to possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1), conditioned on appeal of the district court's denial of his motion to suppress evidence seized at the time of his arrest. On appeal, Mr. Haro-Salcedo argues that impoundment of his vehicle was not authorized by Utah law; that the subsequent search of his vehicle exceeded the permissible scope of an inventory search; and that consequently, the seized evidence was not admissible under the inevitable discovery doctrine. We affirm.

**I.**

In April 1995, Drug Enforcement Administration (DEA) agent Brady Mackay contacted the Salt Lake City Police Department for assistance in arresting Mr. Haro-Salcedo and his brother on outstanding warrants for drug distribution and attempted homicide. When local police stopped their car, Mr. Haro-Salcedo and his brother presented false identification and could not provide any documentation of ownership of the vehicle. Although he explained he had bought the car a few hours earlier, Mr. Haro-Salcedo was unable to provide any information about the purchase. A vehicle check revealed the car was not registered to Mr. Haro-Salcedo, and the attached license plates matched a vehicle of a different make and model. Police arrested Mr. Haro-Salcedo and his brother on the outstanding warrants and impounded the vehicle pending identification of the owner and further DEA investigation.

Agent Mackay searched the vehicle and discovered 420 grams of cocaine in a box in the trunk. Mackay testified that he conducted the search because he believed the car may have contained contraband. He did not complete an inventory form. Salt Lake City police did fill out a form, but it did not list any items because none were taken into separate custody.

## II.

Mr. Haro-Salcedo contends both the impoundment and the subsequent search of his automobile violated his Fourth Amendment rights, and therefore any evidence seized should have been suppressed. *See Wong Sun v. United States*, 371 U.S. 471 (1963); *United States v. Ibarra*, 955 F.2d 1405 (10th Cir. 1992). Following an evidentiary hearing, the district court concluded the impoundment of Mr. Haro-Salcedo's vehicle was lawful, and, while the DEA search for contraband did exceed the permissible scope of an inventory search, the cocaine would have been inevitably discovered during a subsequent proper inventory search. In reviewing the district court's denial of a motion to suppress, we examine the court's findings of fact for clear error, viewing all facts in the light most favorable to the government, but review de novo the reasonableness of the seizure and search. *United States v. Johnson*, 994 F.2d 740, 742 (10th Cir. 1993).

Utah law permits an officer to seize a vehicle without a warrant if he believes the vehicle may have been stolen or if the driver is operating the vehicle without valid

registration. Utah Code Ann. § 41-1a-1101.[1]  The district court found that Salt Lake City police officers impounded the vehicle for two reasons: to hold pending identification of the owner and to hold for further investigation by the DEA.  This finding is supported by the record.

Agent Mackay testified that Salt Lake City police officers decided to impound the vehicle after determining that Mr. Haro-Salcedo could not provide proof of ownership and that his license plates matched a different vehicle.  A Salt Lake City police officer stated he had impounded the vehicle for investigative reasons, but explained that, in any event, department policy dictated impoundment of an automobile in cases where the driver is arrested.  Viewing the evidence in the light most favorable to the district court's

---

[1]  Utah Code Ann. § 41-1a-1101 provides:

Seizure -- Circumstances where permitted
(1) The division or any peace officer, without a warrant, may seize and take possession of any vehicle, vessel, or outboard motor:
(a) that the division or the peace officer has reason to believe has been stolen;
(b) on which any identification number has been defaced, altered, or obliterated;
(c) that has been abandoned on the public highways;
(d) for which the applicant has written a check for registration or title fees that has not been honored by the applicant's bank and that is not paid within 30 days;
(e) that is placed on the water with improper registration; or
(f) that is being operated on the highway:
    (i)  with registration that has been expired for more than three months;
    (ii)  having never been properly registered by the current owner; or
    (iii) with registration that is suspended or revoked.

findings, *Ibarra*, 955 F.2d at 1409, we hold the court's factual findings regarding justification for the impoundment are not clearly erroneous.

Furthermore, in light of these factual findings, impoundment of Mr. Haro-Salcedo's vehicle was reasonable. The driver of the car and one of the passengers were placed under arrest. Neither could prove ownership of the vehicle nor provide proof of registration.[2] The license plates affixed to the car matched a different vehicle. Under these conditions, the car could not be lawfully operated on Utah's roads. *See* Utah Code Ann. § 41-1a-701, 703 (requiring new owner of vehicle to obtain new license plates and registration before operation). Although the record indicates a third person occupied the vehicle, under the circumstances she could not have taken immediate custody of the car. The vehicle, of necessity, had to be impounded.

We have upheld the legality of impoundments in cases which presented similar facts. In ***United States v. Horn***, 970 F.2d 728 (10th Cir. 1992), we deemed impoundment necessary where defendant, traveling alone, was arrested on an outstanding warrant and

---

[2] The district court found that defendant could not produce registration for the vehicle. Although Mr. Haro-Salcedo's lack of registration was not unequivocally demonstrated at the hearing, we believe the district court could have inferred as much. Agent Mackay testified that Mr. Haro-Salcedo did not present "any documentation or title or anything to that effect" to prove ownership of the vehicle. A Salt Lake City police officer testified that after the arrest, officers attempted to identify the "registered owner" of the car. The officer also explained that Salt Lake City police were authorized to impound a vehicle either for improper registration or for investigatory purposes; he stated he had not held Mr. Haro-Salcedo's car "because of the bad registration or no registration" but for further DEA investigation.

provided an unnotarized, handwritten bill of sale to prove ownership of the vehicle. *Id.* at 732. We held in ***United States v. Kornegay***, 885 F.2d 713 (10th Cir. 1989), that even where defendant's arrest did not take place in close proximity to his automobile, the agents' decision to impound the vehicle was reasonable: defendant had presented false identification, no one could take custody of the car, and to have left the vehicle in a public parking lot could have subjected it to vandalism or theft. *Id.* at 716. *See also **United States v. Long***, 705 F.2d 1259, 1262 (10th Cir. 1983) (holding that police properly impounded vehicle pending proof of ownership).

Other courts have reached similar conclusions in determining the propriety of an impoundment. In ***United States v. Williams***, 936 F.2d 1243 (11th Cir. 1991), the Eleventh Circuit was faced with the same multiple-motivation scenario at issue in the instant case. There, an officer, having learned the license plate on defendant's car matched a different vehicle, looked through the car windows and saw two women's purses with their contents spilled on the seat and floor. He conducted a thorough search of the vehicle before impounding it. *Id.* at 1248. The court of appeals affirmed the district court's factual determination that the officer decided to impound the car at the time he discovered the license violation, not at the time he discovered the purses. The court further reasoned that because the officer had the legal right to impound the vehicle and had followed applicable police regulations, evidence was properly seized pursuant to an authorized inventory search. *Id.* at 1249.

The court in ***United States v. Zapata***, 18 F.3d 971 (1st Cir. 1994), did not require the officers to actually impound defendant's vehicle as a predicate to affirming the legality of an inventory search. Instead, relying on an "inevitable impound" theory, the court concluded "the car containing the contraband was unregistered and uninsured. Because the car could not lawfully be driven on a public highway, the state police surely would have impounded it." ***Id***. at 978 (footnote omitted).

Mr. Haro-Salcedo's insistence that ***Ibarra*** and ***United States v. Pappas***, 735 F.2d 1232 (10th Cir. 1984), mandate reversal misses the mark. In ***Ibarra***, we ruled that seizure of defendant's vehicle was not authorized by Wyoming law since the vehicle had not been reported stolen, the person in charge of the vehicle could have provided for its custody, and the defendant was not under arrest at the time the vehicle was impounded. 955 F.2d at 1409. None of those findings apply in the present case.[3] Furthermore, unlike the impoundment statute at issue in ***Ibarra***, Utah law expressly permits seizure of an improperly registered vehicle. ***Pappas*** is as easily distinguished. Although the defendant in that case had been arrested prior to the impoundment, ownership of his vehicle was never in question, and friends were available to take custody of the car. ***Id***. at 1234.

---

[3] While the record here does not reflect suspicion that the vehicle was stolen, officers were unable to confirm ownership at the time of the arrest. Legitimacy of ownership could not have concerned the officers in ***Ibarra***, 955 F.2d 1405, 1407 (10th Cir. 1992), however, since they were prepared to allow defendant's passenger to assume driving duties and take custody of the car.

**III.**

The district court correctly concluded the officers' decision to impound Mr. Haro-Salcedo's vehicle was proper and reasonable under the facts of this case. Having determined the seizure comported with the prescriptions of the Fourth Amendment, we must now review the reasonableness of the DEA agent's subsequent inventory search. Mr. Haro-Salcedo argues Agent Mackay's search exceeded the permissible scope of an inventory search because it was conducted for the sole purpose of discovering incriminating evidence.

An inventory search is a well-defined exception to the warrant requirement of the Fourth Amendment, *Colorado v. Bertine*, 479 U.S. 367 (1987); *South Dakota v. Opperman*, 428 U.S. 364 (1976), designed to effect three purposes: protection of the owner's property, protection of the police against claims of lost or stolen property, and protection of the police from potential danger. *Opperman*, 428 U.S. at 369; *United States v. Lugo*, 978 F.2d 631, 636 (10th Cir. 1992). However, inventory searches are reasonable only if conducted according to standardized procedures. *Bertine*, 479 U.S. at 377 (Marshall, J., concurring). An inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence, but rather an administrative procedure designed to produce an inventory. *Florida v. Wells*, 495 U.S. 1, 4 (1990). *See also United States v. Thompson*, 29 F.3d 62, 65 (2d Cir. 1994) ("The fruit of inventory

searches, however, will be suppressed when the searching agents act in bad faith or solely for the purpose of investigation").

The district court found the DEA search, conducted for investigatory rather than administrative purposes, could not properly be characterized as an inventory search. We agree. Agent Mackay testified that he searched Mr. Haro-Salcedo's vehicle to examine a box he believed may have contained contraband. He stated he was not familiar with the Salt Lake City police department inventory policy and could not describe the usual extent of an inventory search conducted in accordance with that policy. He explained that although he removed several items from the vehicle, he did not complete a written inventory form. These facts strongly support the district court's conclusion that Agent Mackay used the roadside inventory as a pretextual investigatory search. *See Johnson*, 994 F.2d at 743 (evidence suppressed where federal agent used state administrative search as pretext for gathering evidence for federal investigation); *Lugo*, 978 F.2d at 637 (evidence suppressed where search clearly exceeded scope and purpose of inventory search). Thus, the warrantless search of Mr. Haro-Salcedo's vehicle was unreasonable, and the evidence seized could not be admissible under an administrative search theory.

Still, suppression of the cocaine is not appropriate in this instance where the contraband would nonetheless have been discovered. The inevitability of discovering evidence by lawful means removes the taint from evidence first discovered through unlawful means. *Nix v. Williams*, 467 U.S. 431, 444 (1984). Consequently, if evidence

seized unlawfully would have been inevitably discovered pursuant to a legal search, the evidence is admissible. *See Ibarra*, 955 F.2d at 1410.

This court has affirmed the inevitable discovery doctrine in the context of an illegal search which preceded lawful impoundment and inventory. In *Horn*, 970 F.2d at 732, we rejected defendant's argument that lack of consent rendered the officer's seizure of evidence illegal. Instead, we reasoned that "the question whether or not the trooper conducted a proper inventory search is moot. '[I]f evidence seized unlawfully would have been inevitably discovered in a subsequent inventory search, such evidence would be admissible.'" (quoting *Ibarra*, 955 F.2d at 1410).

Several other circuits have reached the same conclusion. *See United States v. Woody*, 55 F.3d 1257, 1270 (7th Cir.) (evidence in glove box of vehicle would have been inevitably discovered through inventory search following defendant's arrest), *cert. denied*, 116 S.Ct 234 (1995); *Zapata*, 18 F.3d at 978-79 (evidence would have been inevitably discovered during inventory search following impoundment for lack of registration and insurance); *United States v. Seals*, 987 F.2d 1102, 1107-08 (5th Cir. 1993) (drugs would have been inevitably discovered through inventory search after impoundment for lack of license); *United States v. George*, 971 F.2d 1113, 1121-22 (4th Cir. 1992) (evidence admitted although warrant defective because weapons would have been inevitably discovered through inventory search); *Williams*, 936 F.2d at 1248-49 (evidence admissible in spite of initial illegal search because drugs would have been

inevitably discovered through inventory search following impoundment for improper license plate); *United States v. Arango*, 879 F.2d 1501, 1507 n.2 (7th Cir. 1989) (evidence seized pursuant to search incident to arrest also admissible under inevitable discovery doctrine); *People v. Nelson*, 486 N.Y.S.2d 979, 984 (Sup. Ct. 1985) (officer's motive in conducting inventory search irrelevant where vehicle properly impounded and administrative procedures mandate inventory).

Here, police officers lawfully impounded Mr. Haro-Salcedo's vehicle after his arrest. Salt Lake City police department procedures mandate an inventory search to secure personal items found in a defendant's seized vehicle. SLPD Impound Policy, 4-08-16.04(B). Mr. Haro-Salcedo does not dispute that a proper inventory search would have uncovered the cocaine in the trunk of his vehicle. He argues rather that the officers' deviation from standard departmental procedures revealed the impermissible purpose of the search. Addressing defendant's identical contention in *Horn*, we concluded that "[e]ven assuming arguendo that the post-arrest search beside the highway was improper and should have been conducted in a different manner, had the search been conducted in the manner defendant suggests is proper, it was inevitable that the weapons would have been discovered." 970 F.2d at 732. We believe the same reasoning applies in this case. Mr. Haro-Salcedo's motion to suppress evidence seized from his vehicle was properly denied pursuant to the inevitable discovery rule.

**AFFIRMED**.